UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRETT HOBSON, | ) |
|       Plaintiff, | ) |
| v. | ) No. 1:20-cv-01163-JPH-TAB |
| WEXFORD OF INDIANA, LLC., | ) |
| CONYERS, | ) |
| NOLL, | ) |
| DUSHAN ZATECKY, | ) |
| D. INGALLS, | ) |
|       Defendants. | ) |

**ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Brett Hobson alleges that the defendants were deliberately indifferent to his serious medical needs while he was incarcerated at Pendleton Correctional Facility. The parties have filed cross-motions for summary judgment. For the reasons below, Mr. Hobson's motion, dkt. [77], is **denied**, the State Defendants' motion, dkt. [81], is **granted**, and the Medical Defendants' motion, dkt. [73], is **granted in part and denied in part**.

### I.    Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party

1

must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on cross-motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648.

## II. Factual Background

The following facts are undisputed except as noted below.

### A. The Parties

At all relevant times, Mr. Hobson was an inmate in the Indiana Department of Correction ("IDOC") housed at Pendleton Correctional Facility. Dkt. 75-4 at 6–7.

At all relevant times, Wexford of Indiana, LLC, was contracted with IDOC to provide medical care to inmates at Pendleton. Dkt. 9 at 4.

Dr. Greg Noll, D.D.S., is a licensed dentist who, at all relevant times, was employed by Wexford to provide dental services to prisoners at Pendleton. Dkt. 75-2 at 1 ¶ 1–3. Dr. Noll was the only dentist at Pendleton for a prison population of about 1800 inmates. *Id.* at 2, ¶ 5.

Ms. Ingalls is a licensed dental radiographer who, at all relevant times, was employed by Wexford as a dental assistant at Pendleton. Dkt. 75-3 at 1 ¶ 1–2. Ms. Ingalls' position involved assisting the dentist during examinations and treatment of Pendleton inmates, assisting with screenings for dental emergencies, and "routinely interact[ing] with all health care unit personnel, site

2

administration staff, security staff, clinical providers, regional team members, and offenders housed" at Pendleton.  *Id.* at ¶ 3. (collectively Wexford, Dr. Noll, and Ms. Ingalls are the "Medical Defendants").

At all relevant times, Warden Dushan Zatecky and Major Michael Conyers (collectively, "State Defendants"), held supervisory positions at Pendleton. Dkt. 83-1 at 48:18–22, 50:19–24.

**B. Mr. Hobson's Dental Treatment**

Mr. Hobson complained of "two (2) broken teeth" and submitted multiple healthcare requests related to this issue. Dkt. 2 at 2; dkt. 75-3 at 2-3.

On October 21, 2019, the dental department received the first healthcare request from Mr. Hobson complaining that "I have two broken teeth that are bothering me." Dkt. 75-1 at 7. On October 31, the dental department received a second request from Mr. Hobson that said "I have 2 broken teeth that are bothering me. Very painful when I'm trying to eat." *Id.* at 12. Following the October 31 request, Mr. Hobson was told that he had already been placed on the waiting list to be seen by the dental clinic and that custody staff would need to escort him there.  *Id.*

On November 26, the dental department received a third request about Mr. Hobson's two broken teeth, labeled "informal grievance." *Id.* at 11. The department responded that "[c]ustody was aware of all offenders on the list to be escorted to the dental clinic.  We are at the mercy of custody to get you over here." *Id.*

3

On December 23, about eight weeks after submitting his first request, Mr. Hobson was seen by dental staff for pain in two of his teeth.  Dkt. 75-2 at 3, ¶ 10.  Dr. Noll completed an oral examination and an X-ray, concluded that one tooth needed to be extracted as non-restorable, and performed the extraction with Mr. Hobson's consent.  *Id.*  Dr. Noll also prescribed an antibiotic, "based on decay identified within the x-ray," and Ibuprofen for pain management.  *Id.*

Mr. Hobson testified in his deposition that, even though he had complained about two teeth, Dr. Noll and Ms. Ingalls informed him that "Wexford had a policy of one tooth per request[.]"  Dkt. 75-4 at 25.  Ms. Ingalls and Dr. Noll both advised Mr. Hobson to submit another healthcare request form after his appointment to be seen for any additional issues. *Id.* at 33-34, 35. That same day, Mr. Hobson filled out a fourth healthcare request form, which the department received on December 26, which stated "I still need my other tooth I wrote about on my last request looked at."  Dkt. 75-1 at 4.

About 10 days later, Mr. Hobson submitted a fifth healthcare request explaining "I still have the 2nd tooth that is bothering me . . . when will I be seen?" Dkt. 75-1 at 10.  The department responded the next day explaining, "we have you on the list, waiting on custody to get staff available."  *Id.*

A month later, Dr. Noll saw Mr. Hobson a second time.  Dkt. 75-2 at 4. At that visit, Dr. Noll extracted a second tooth, which he determined to be non-restorable, and prescribed an antibiotic. *Id.*  Dr. Noll attests that the antibiotic he prescribed on December 23 "would have covered any possible infection that may have been present in tooth #20 at the time of [that] appointment." *Id.* at 4-

4

5. But, based on his review of the X-rays performed in December 2019 and February 2020, he also attests "it is likely that both teeth #14 and #20 were non-restorable by the time [Mr. Hobson] was first triaged in December 2019." *Id.* at 5.

### C. Mr. Hobson's Interactions with the State Defendants

At some point after December 23, Mr. Hobson appealed a grievance decision and Warden Zatecky responded to Mr. Hobson's grievance appeal. Dkt. 75-4 at 49:14-25. Other than the grievance appeal, Mr. Hobson did not communicate directly with Warden Zatecky regarding his dental issues. *Id.* at 51:5-9. Mr. Hobson had no direct contact with Major Conyers concerning his dental issues. Dkt. 75-4 at 49:4-13.

### III.   Discussion

### A. Mr. Hobson's Motion for Summary Judgment

Mr. Hobson filed a motion for summary judgment, dkt. 77, but he did not comply with the requirements of S.D. Local Rule 56-1. Therefore, his motion is summarily **denied**. *Hintenberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) ("district courts may require strict compliance with their local rules").

### B. Medical Defendants' Motion for Summary Judgment

#### 1. Dr. Noll & Ms. Ingalls

Mr. Hobson alleges that both Dr. Noll and Ms. Ingalls (the "Providers") were deliberately indifferent to his dental needs by "waiting 66 days to treat the first tooth . . . then not looking at the 2nd tooth for another 40 days resulting in pain." Dkt. 2 at 6, ¶¶ 33, 34. The Providers moved for summary judgment arguing that

5

Dr. Nolls' treatment of Mr. Hobson was based on his medical training and judgment, he never refused to meet with Mr. Hobson, and he did not provide treatment "that he believed to be ineffective," dkt. 74 at 21, and that Ms. Ingalls reasonably responded to his healthcare requests and has no authority over diagnosing or directing inmates' dental care, *id.* at 24. They also argue that neither has authority over when transports occur. *Id.* at 21, 24.

Mr. Hobson has designated no evidence to contradict the Providers' evidence that they did not control transport decisions,[1] so the Court considers only whether there is evidence from which a jury could conclude that the Providers were deliberately indifferent to his serious medical condition on December 23 and thereafter caused a delay further in his treatment.

"Prison officials violate the [Eighth Amendment's] prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The deliberate indifference "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and

---

[1] Mr. Hobson argues that an email between Ms. Ingalls and custody officers he submitted as evidence with his motion for summary judgment, dkt. 77-1, supports an inference that she had authority to govern transport decisions. As noted above, this evidence is not considered because Mr. Hobson's motion is summarily denied.

6

safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted).

As to the first element, it is undisputed that Mr. Hobson's dental issues constituted a serious medical condition. Dkt. 74 at 17.

"The second element of deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (cleaned up). The prisoner must show that the official was "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety from lack of treatment." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). "[D]eliberate indifference requires 'more than negligence and approaches intentional wrongdoing.'" *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). Deliberate indifference can be shown by a "treatment decision that is 'so far afield of accepted professional standards' that a jury could find it was not the product of medical judgment." *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

### a. Dr. Noll

Here, there are material disputed facts regarding whether Dr. Noll disregarded the "excessive risk that a lack of treatment posed to the prisoner's health or safety from lack of treatment" when he decided to extract only one tooth at the December 23 appointment. *Wynn*, 251 F.3d at 593.

While "[a] medical professional is entitled to deference in treatment decisions, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014), "[i]f a prison doctor chooses an easier and less efficacious treatment without exercising professional judgment, such a decision can [] constitute deliberate indifference." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016) (quotation omitted). Moreover, a delay in treatment may be evidence of deliberate indifference if it unnecessarily prolongs an inmate's pain or exacerbates an injury. *Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018).

At the December 23 appointment, Dr. Noll knew that Mr. Hobson sought treatment for two teeth. Dkt. 75-2 at 3, ¶ 10. And Mr. Hobson's prior healthcare requests stated he had two broken teeth that were making it painful to eat. Dkt. 75-1 at 7, 11, 12. The x-ray revealed one tooth was "non-restorable due to caries extending to the pulp, and once tooth decay reaches the pulp of the tooth, the tooth is considered infected by the bacteria causing the decay." Dkt. 75-2 at 3 ¶ 10. At the end of the appointment, Dr. Noll "ordered antibiotics for the [Mr. Hobson] based on the decay identified within the x-ray." *Id.*

Dr. Noll contends that he treated both teeth on December 23 because the antibiotics would have covered "any possible infection that may have been present in tooth #20 at the time of the December appointment." Dkt. 75-4 at 5 ¶ 14. But Dr. Noll also says that "based on [his] review of the dental x-rays completed in December 2019 and February 2020, it is likely that both teeth #14 and #20 were non-restorable by the time of the Plaintiff was first triaged in December 2019." *Id.* Dr. Noll provides no medical reason why, given that

8

immediate extraction of the first tooth was deemed necessary at the December appointment, the second tooth wasn't also extracted. And Mr. Hobson states that the infected tooth that wasn't extracted caused him an additional, unnecessary "40 more days of pain." Dkt. 75-4 at 19.

In *King v. Kramer*, the Seventh Circuit found "there is a question of material fact whether [a nurse's] actions were so far afield from an appropriate medical response to [an inmate's] seizures that they fell outside the bounds of her professional judgment." 630 F.3d 1013, 1019 (7th Cir. 2012). There, the inmate presented evidence that the nurse was aware the inmate may be withdrawing from medications and that withdrawal could cause seizures, but when she tested for seizures, she "deliberately ignored the results of the tests she was able to administer." *Id.*

Viewing evidence in the light most favorable to Mr. Hobson, a jury could find that on December 23, Dr. Noll knew that both of Mr. Hobson's teeth were infected and non-restorable. Dkt. 75-2 at 5, ¶ 14 ("Based on my review of the dental x-rays completed in December 2019 and February 2020, it is likely that both teeth #14 and #20 were non-restorable by the time of the Plaintiff was first triaged in December 2019."). But he provides no explanation—based on medical judgment or otherwise—why he chose to extract one infected tooth and treat the other infected tooth with antibiotics, only to extract it 40 days later.

Moreover, Mr. Hobson says that Dr. Noll told him he had to submit another request to get the second tooth fixed because Wexford had a rule of "one tooth per request." Dkt. 75-4 at 25. While the Court accepts this as true for purposes

9

of summary judgment, Defendants' discovery responses lend further support to an inference that something other than medical judgment may have influenced Dr. Nolls' decision. *Compare* dkt. 87-1 at 1 (Interrogatory response: "Plaintiff was advised to submit another healthcare request to treat tooth #20.") *with* dkt. 74 at 23 (admitting that Ms. Ingalls recalls Mr. Hobson was "advised that per IDOC policy, dental staff can only address one (1) issue per submitted healthcare request form.").

A reasonable jury could infer that Dr. Nolls chose an "easier less efficacious treatment" based on what he thought was a Wexford policy rather than his medical judgment, *Wilson*, 901 F.3d at 822. And the delay until Mr. Hobson's next appointment caused Mr. Hobson pain and increased the risk of serious harm resulting from the remaining infected tooth. *Board*, 394 F.3d at 480 n.4 ("The risks posed by tooth loss . . . cannot be underestimated."); *see also Wynn*, 251 F.3d at 593 ("Dental care is one of the most important medical needs of inmates.").

From the evidence, a jury could reasonably conclude that on December 23, Dr. Noll "deliberately ignored" Mr. Hobson's other infected tooth and was, therefore, deliberately indifferent to Mr. Hobson's serious medical needs.

Therefore, the Medical Defendants' motion for summary judgment as to Dr. Noll is **denied**.

### b. Ms. Ingalls

Ms. Ingalls argues that she is entitled to summary judgment because "she does not have legal authority to diagnose patients or order specific dental care

for any offender." Dkt. 74 at 24. Mr. Hobson has designated no evidence to dispute this.

While the record shows that, before the December 23 appointment, Ms. Ingalls was informed about the extent of Mr. Hobson's pain, and responded to his healthcare requests, dkt. 75-1 at 8, 11, 12, there is no evidence that Ms. Ingalls' actions were objectively unreasonable or that she disregarded a substantial risk to Mr. Hobson's health. Rather, the evidence in the record shows that she placed Mr. Hobson on the appropriate list to be escorted to the dental clinic, advised Mr. Hobson that he was on the list, and notified him that the dental staff "is at the mercy of custody movement staff as it relates to getting offenders placed in restrictive housing over to the dental clinic." Dkt. 75-3 at 3. And, after his January 6 request, she again advised him that he was already on the list to be seen. Dkt. 75-1 at 10. Even in the light most favorable to Mr. Hobson, no reasonable jury could find that Ms. Ingalls' conduct constituted deliberate indifference.

Therefore, the Medical Defendants' motion for summary judgment as to Ms. Ingalls is **granted**.

### 2. Wexford

During the relevant time period, Wexford acted under color of state law by providing medical care to state prisoners, so it is treated as a government entity for purposes of Section 1983 claims. *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019). Thus, Wexford "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations

11

committed by [its] employees. [It] can, however, be held liable for unconstitutional ... policies or customs." *Simpson v. Brown County*, 860 F.3d 1001, 1005-06 (7th Cir. 2017) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)).

"The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one untaken by a subordinate actor?" *Glisson v. Ind. Dept. of Corrections*, 849 F.3d 372, 381 (7th Cir. 2017) (*en banc*). An action is one of the "institution itself," *id.*, when the municipality's "official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind [the] constitutional injury," *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (citing *Monell*, 436 U.S. 658; *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)); *see Humphries*, 562 U.S. at 36 (reciting the "list of types of municipal action" that can lead to liability).

The "stringent" and precise grounds for *Monell* liability are required by section 1983. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 402–404, 415 (1997); *see Humphries*, 562 U.S. at 36. Courts must apply "rigorous standards of culpability and causation" to prevent municipal liability from collapsing into *respondeat superior* liability, which section 1983 prohibits. *Brown*, 520 U.S. at 405; 415.

Here, Mr. Hobson testified in his deposition that he was informed by both Dr. Noll and Ms. Ingalls that he had to choose one of two broken teeth to be treated on December 23 and then file a separate healthcare request form for the

other tooth to be treated. *See* dkt. 75-4 at 33:10 to 34:22. He says that they told him "Wexford has the policy of one tooth per request." *Id.* at 25:3–4. That Mr. Hobson filled out an additional healthcare request form on December 23 complaining that he wanted his "other tooth" to be treated, dkt. 77-1 at 6, supports the inference that he was, in fact, told this information.

Certainly, a reasonable jury could find that he was told the policy existed, but even viewing the evidence in the light most favorable to him, Mr. Hobson's evidence falls short of showing any official written policy, a widespread custom, or action of a "person with final policymaking authority." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). That is, he has not presented evidence establishing any sort of the "municipal action" required to support a *Monell* claim. *Id.*

Therefore, the Medical Defendants' motion for summary judgment as to Wexford is **granted**.

### C. State Defendants' Motion for Summary Judgment

Mr. Hobson has also brought claims against Warden Zatecky and Major Conyers alleging that they "failed to have staff available to escort [him] over to the dental department for his multiple dentist appointments." Dkt. 2 at 6. But no designated evidence would allow a jury to find that either Warden Zatecky or Major Conyers was deliberately indifferent to Mr. Hobson's serious medical needs.

"Non-medical officials are presumptively entitled to defer to the professional of the facility's medical officials on questions of prisoners' medical

13

care." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (internal quotation omitted); *see also Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) ("non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment."). Nevertheless, a non-medical official may be liable for knowingly disregarding an excessive risk to an inmate's safety, such as through the denial of, delay of access to, or interference with the inmate's medical treatment. *See Giles*, 914 F.3d at 1050-51 (discussing whether "non-medical defendants knew of and disregarded an excessive risk to [the plaintiff's] health and safety"); *see also Burks v. Raemisch*, 555 F.3d 591, 595 (7th Cir. 2009) (explaining that deliberate indifference would exist where non-medical staff "prevent[ed] the medical unit from delivering needed care").

Here, Warden Zatecky's only interaction with Mr. Hobson was his response to Mr. Hobson's grievance appeal, telling Mr. Hobson that because he was not a medical professional, he had to rely on the judgment of those who are. Dkt. 83-1 at 50-51. This was a reasonable and lawful response. *Eagan*, 987 F.3d at 694. Moreover, because Mr. Hobson's response brief is devoid of any mention of Warden Zatecky, *see* dkt. 89 at 1-3, he has waived any argument in opposition to Warden Zatecky's motion. *See Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("[T]he non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Accordingly, Warden Zatecky is entitled to judgment as a matter of law.

Similarly, Major Conyers is entitled to judgment as a matter of law. Mr. Hobson argues in his response brief that Major Conyers was one of two people who received an email from Ms. Ingalls on December 19, 2019 stating that he was to be escorted to the dental office, *see* dkt. 89 at 3. However, the undisputed evidence shows that he was escorted to the dental office only four days later on December 23, 2019. *See* dkt. 75-2 at 3; 75-4 at 32. That same email also lists December 23, 2019 date as the next earliest date that Dr. Noll would be present at the facility. *See* dkt. 90-1 at 1 (email from Ms. Ingalls to Major Conyers stating that "Dr. Noll will only be here 12/23/19 and 12/24/29 next week").[2] Because Mr. Hobson has provided no evidence that Major Conyers knew of and disregarded an excessive risk to his health and safety, Major Conyers is entitled to summary judgment.

### IV. Conclusion

The Medical Defendants' motion for summary judgment, dkt. [73], is **granted** in part **denied** in part. The State Defendants' motion for summary judgment, dkt. [81], is **granted**. Mr. Hobson's motion for summary judgment, dkt. [77], is **denied**.

The **clerk is directed** to **terminate Defendants Conyers, Zatecky, and Ingall** as parties on the docket. No partial judgment will enter.

---

[2] To the extent that Mr. Hobson argues that because of Major Conyers' supervisory position at PCF he was responsible for any failure to escort him to the dental office, such argument is unavailing. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly.").

15

Mr. Hobson's claims against Dr. Noll will be resolved by settlement or trial. The Court *sua sponte* reconsiders and **grants** Mr. Hobson's motion to appoint counsel, dkt. [38], insofar as the Court will attempt to recruit counsel to assist Mr. Hobson through the entry of final judgment. The Court requests that Magistrate Judge Baker hold a status conference after recruited counsel has been appointed for the purpose of setting new pretrial deadlines.

**SO ORDERED.**

Date: 3/31/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

BRETT HOBSON
935709
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only